UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRIDENT CIRCLE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-0282 |
| | § | |
| T & T SUBSEA, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

Before the Court is the plaintiff's, Trident Circle, Inc. ("Trident,") suit for recovery of damages against the defendant, T&T Subsea, LLC., ("T&T,"), due to alleged negligence on the part of T&T in the location and marking of the MISS EVA. The Court has received testimony, exhibits, arguments, and memoranda from the parties and after a careful review of the evidence and law that Trident should/should not recover in the case.

**II. UNDISPUTED FACTS**

The evidence shows that the MISS EVA, upon returning from a shrimping expedition on or about December 1, 2014, sustained damage to the vessel, cargo and crew when a fire occurred in the engine room. As a result of the fire, the vessel sank and the crew was forced to abandon the vessel. Although the vessel sank, it was not completely submerged – the stern was exposed revealing some 10 feet of the vessel including its identifying numbers.

On or about December 17, 2014, Trident retained T&T to locate, video and mark the location of the vessel and perform a survey. Pursuant to the agreement, T&T was paid $24,148.36. On or about December 21, 2014, T&T personnel located the MISS EVA in a

vertical position with approximately 10' of the stern above the waterline. There were no visible signs of damage and Trident decided to salvage the vessel. However, the bow was mired on the sea floor. To fulfill its agreement, T&T installed a buoy and attached the buoy to the vessel with a 90-foot wire – compensating for a 65-foot depth of sea, in the event the MISS EVA completely sank.

The parties do not dispute that best practices, industry standards and recommendation(s) by the U.S. Coast Guard required that the buoy used by T&T be sufficient in size, appropriately colored and sufficiently lit to provide notice to mariners of the vessel's existence even in the event the MISS EVA were to completely sink. The MISS EVA, disappeared on or after the middle of February 2015.

On or about March 24, 2015, Trident, for the first time, set out to locate the vessel. Unable to locate the vessel on two subsequent occasions, March 30 and in April 2015, Trident abandoned efforts to locate the vessel. At no time since, has the vessel been located.

### III. TRIDENT'S AND T&T'S CONTENTIONS

As a result of the errors and omissions allegedly committed by T&T, Trident brought suit against T&T was negligent concerning the manner that it marked the MISS EVA. Specifically, Trident asserts that T&T failed to use reasonable care and, therefore, failed to: (1) mark the vessel consistent with the U.S. Coast Guard's recommendations; (2) comply with industry standards and best practices in marking the MISS EVA; (3) inform Trident that it had marked the vessel with a temporary buoy, and (4) use a proper size buoy that would not be easily confused with a fairway buoy or channel marker. Finally, Trident contends that T&T knew that Trident intended to salvage the vessel and should not have marked it with a temporary buoy.

Trident's expert testified that the MISS EVA could have been marked in two ways. The better marking, he testified, would be a mooring that was anchored apart from the vessel. The second way to mark the vessel would be to attach a buoy to the vessel utilizing larger buoys and wire. Specifically, he testified that the placement of a single buoy did not comply with standards for attachment, T&T used the wrong size buoy, (too low in height), the light cap on the buoy was not according to regulation, thereby, creating confusion and, T&T should have used "Cardinal" buoys.

T&T asserts that it contacted the United States Coast Guard regarding the type of marking that it would approve. On December 19, the Coast Guard responded to T&T's request. On December 22, T&T contends that the vessel was marked in accordance with the Coast Guard's requirements, i.e., "shackling a red buoy with a quick flashing red light to the portion of the wreck sticking above the water with 90' of stainless steel wire cable." Therefore, T&T contends that it is not liable for Trident's loss and, in fact, should be indemnified for the cost of Trident's suit against it.

## IV. STANDARD OF REVIEW/JURISDICTION

The Court has jurisdiction over this suit under the admiralty and maritime jurisdiction, 28 U.S.C. § 1333. General maritime law of negligence recognizes a duty of reasonable care. A party's negligence is accountable under general maritime law only if it is a "legal cause" of the plaintiff's loss. *See Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 648 (5th Cir. 1992). A defendant's negligence, however, must be a "substantial factor" in causing the loss. *Id.* The term "substantial" means "more than, but for the negligence, the harm would not have resulted." *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978). Where more than one party is at fault, the comparative negligence standard applies.

Under the Wreck Act, it is the duty of the owner to immediately mark a sunken vessel and commence removal of the obstruction. A delay in removal places the duty on the owner to maintain the marker until the obstruction is removed. *See Inland Tugs Co. v. Ohio River Co.,* 709 F.2d 1065, 1071 (6th Cir. 1983).

V.   DISCUSSION AND ANALYSIS

The contract between Trident and T&T stated that T&T was responsible for the "placement of marker buoy and underwater survey, [take] [p]hotos and video . . . [and] . . . completed [all work] at Loop anchorage." See [Trident Exhibit #6]. The contract, however, did not specify the type of marker or markers to be used. Nor did it specify the manner by which the marking would be accomplished. It is undisputed that the MISS EVA was marked on or about December 22, 2014, with a lighted buoy that was attached to the vessel by a wire. It is also undisputed that both Trident and the United States Coast Guard were notified upon completion of the marking. The record further shows that neither Trident nor T&T received any communication from the U.S. Coast Guard that the marking was improper. The vessel was last seen in mid-February 2015.

The evidence is undisputed that Trident, as owner of the vessel, was responsible for maintaining the marker. *See* 33 U.S.C. § 409; 33 CFR Part 64. Moreover, Trident was informed that the vessel was moving in the gulf. Nevertheless, Trident did not check on the vessel until March 24, 2015. Instead, Trident relied, to its detriment, on reports from the U.S. Coast Guard and a platform ship shoal that the buoy was visible.

Trident had a non-delegable duty to maintain the mark on the vessel until it was removed and to immediately remove the vessel from the waters of the Gulf of Mexico. 33 USC § 409 and 33 CFR Part 64. Trident failed in its duty to do so and, therefore, was negligent by not monitoring and maintaining the mark on the wreck of the MISS EVA or immediately removing the vessel from the waters of the Gulf of Mexico. By waiting three months to charter a vessel for the first time to go out to the wreck of the MISS EVA, Trident was solely negligent. Trident has also failed to establish any causal link between T&T's performance under the Agreement and Trident's inability to locate the MISS EVA.

## VI. CONCLUSIONS OF LAW

T & T's contract with Trident obligated T & T to perform the placement of a marker buoy and conduct an underwater survey." T & T fully satisfied its contractual obligations by marking the vessel according to the United States Coast Guard's instructions. T & T had no further contractual obligations to Trident. Trident had a duty to monitor the vessel and that duty was continuous. The Fifth Circuit has explained that when a vessel is "wrecked and sunk in a navigable channel, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon…and to maintain such marks until the sunken craft is removed." *Humble Oil & Refining Co. v. Tug Crochet,* 422 F.2d 602, 608 (5th Cir. La. 1970). The Circuit stated:

> Common sense in regulations tell even landlubbers that floating aids to navigation are liable to be carried away or disabled through natural causes or accidents and are not as reliable as shore-based navigational aids.

*Id*. The failure of a vessel owner to fulfill its duty to properly mark, monitor and maintain the marking of a sunken wreck is unlawful. *Id.*; *see also Allied Chem. Corp. v. Hess Tankship Co.*,

661 F.2d 1044, 1061 (5th Cir. 1981); and *Nunley v. M/V Dauntless Colocotronis*, 863 F.2d 1190, 1203-04 (5th Cir. 1989). Therefore, the Court concludes that Trident should take nothing by its suit and further, that T&T is not entitled to be indemnified for its legal fees.

It is so Ordered.

SIGNED on this 20th day of October, 2017.

                                                Kenneth M. Hoyt
                                                United States District Judge